UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

CHERRY FARMS, LLC,

Plaintiff,

v.                    409cv043

SAULAT ENTERPRISES, INC.,

Defendant.

## ORDER

### I. Introduction

In this breach of contract case, plaintiff Cherry Farms, LLC, ("Cherry Farms") sued defendant Saulat Enterprises, Inc., ("Saulat") for breach of a lease agreement. Doc. # 1. In its complaint, Cherry Farms invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332, alleging that "this is an action between citizens of different states, and the amount in controversy in this action, exclusive of interests and costs, exceeds the sum of $75,000." *Id.* at 1-2. Saulat has responded with the motion to dismiss presently before the Court, in which it argues that this Court is without jurisdiction to hear Cherry Farms' claim because the claim does not meet the required amount in controversy. Doc. # 8.

### II. Background

On May 3, 2000, Cherry Farms and Saulat entered into a commercial lease agreement, whereby Saulat would lease certain commercial property owned by Cherry Farms for a lease term of twenty years. Saulat failed to make timely payments to Cherry Farms for several months in 2001, for most of 2008, and for January 2009. Doc. # 1 at 2. Additionally, from September 2008 through January 2009, Saulat only paid half of the rental amount due each month. *Id.* at 3. Following Saulat's failure to make any rental payment in February 2009, Cherry Farms terminated the lease by letter, and filed this action to recover certain damages. *Id.* at 5. The lease was officially terminated on February 12, 2009, more than ten years premature to its agreed-upon end date of July 14, 2019. *Id.*

In its complaint, Cherry Farms first seeks damages for Saulat's "failure to make payments owed pursuant to the Lease and to keep the Premises in good condition." *Id.* at 4. Additionally, Cherry Farms seeks to invoke an acceleration of rent provision within the lease. The provision states:

> Landlord may elect by written notice to Tenant within 60 days following such termination to be indemnified for loss of rent by lump sum payment representing the difference between the amount of rent which would have been paid in accordance with this Lease for the Terminated Lease Property for the remainder of the Lease Term (using the base rent which would have been paid in accordance with this Lease plus all taxes, insurance and other expenses required to be paid by Tenant hereunder) and the aggregate fair market rent of the Terminated Lease Property for the remainder of the Lease Term, estimated as of the date of termination, both of which amounts shall be discounted using a discount rate equal to Treasury Securities with maturity date approximately equal to the remaining term of the Lease.

*Id.*, exh. A (lease agreement) at § 17.2(b). As a result, Cherry Farms avers that it is entitled to collect "the present value of the future rent under the lease reduced by [the] present value of the future rental value of the Premises during the remaining term of the

lease." Doc. # 13 at 3. In its complaint, Cherry Farms does not state a concrete amount of future rent it claims it is entitled to collect, but it reasons that it exceeds the jurisdictional amount in controversy requirement in the following way: "Remaining rental payments due from February 1, 2009 through July 14, 2019 total $706,411.41. Present rental value of the Premises is, at most, fifty percent (50%) of the Lease rental value. This provides a rental deficit well in excess of $75,000.00."[1] Doc. # 1 at 5. Additionally, Cherry Farms seeks attorney's fees and litigation expenses pursuant to § 17.2(b) of the lease. *Id.* at 6.

In response, Saulat filed the present motion to dismiss, urging the Court to "dismiss the case for lack of subject matter jurisdiction because Plaintiff Cherry Farms, LLC's claim does not meet the amount in controversy requirement for diversity jurisdiction...." Doc. # 8 at 1. In particular, Saulat argues that "Cherry Farms' claim for acceleration of rent is based on an unenforceable penalty provision in the lease," and therefore, "even assuming Count I [for past damages due to the breach and failure to keep the premises in good repair] states a claim upon which relief can be granted, Cherry Farms has alleged that damages are far less than the required $75,000." *Id.* at 2, 6 (citing exh. B to Cherry Farms' complaint, where it avers that it is owed $19,671.88 on Count I).

Cherry Farms, in its reply, argues that the accelerated rent provision is not an unenforceable penalty provision, but is in fact a valid liquidated damages provision, and that it is therefore enforceable under Georgia law. Doc. # 13.

---

[1] Accepting Cherry Farms' claim that the present rental value of the property is at most 50% of Lease rental value, the Court can infer that Cherry Farms' future rent claim should be worth at least $353,205.71 (e.g., $706,411.41 - (0.5 x $706,411.41) = $353,205.71).

### III. Analysis

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). The Court elaborated that, in order to justify dismissal for lack of subject matter jurisdiction, "[i]t must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount." *Id.* (emphasis added). As Cherry Farms only claims *past* damages in the amount of $19,671.88, *see* doc. # 1, exh. B, but also alleges "a rental deficit well in excess of $75,000" (based on the difference between the "remaining rental payment" total of $706,411.41, and a present rental value estimation of, "at most, fifty percent"), the Court's subject matter jurisdiction over this case turns on the validity of the accelerated rent provision, upon which Cherry Farms bases a majority of its damages.

In *Nobles v. Jiffy Mkt. Food Store Corp.*, the Georgia Court of Appeals explained that "while a tenant generally is not responsible for rent accruing after the landlord resumes possession, the parties may contract otherwise, provided that the lease agreement contains 'an explicit and detailed provision ... which clearly and unequivocally expresse[s] the parties' intention to hold the [tenant] responsible for after-accrued rent.'" 260 Ga. App. 18 at 20 (2003) (quoting *Peterson v. P.C. Towers, L.P.*, 206 Ga. App. 591, 591-92 (1992)). The court then set forth a three-part test, whereby an accelerated rent provision will be enforceable as a valid liquidated damages clause if: "(1) the injury caused by breach of the lease is difficult or impossible to estimate accurately; (2) the parties intend to provide for damages rather than a penalty; and (3) the stipulated sum is a reasonable

2

pre-estimate of the landlord's probable loss." *Id.* (citing *Peterson*, 206 Ga. App. at 593). The *Nobles* court stressed that "[i]f these requirements are not met, then the accelerated rent provision 'fails as a penalty.'" *Id.*

Regarding the first *Nobles* requirement, the Georgia Court of Appeals has explained,

> The measure of damages in an action seeking to recover in advance for the full remaining term of a breached lease is the difference between what the tenant would have had to pay in rent for the balance of the term, and the fair rental value of the premises for the balance of the term. Although the amount of damage for a breach of a lease is easily stated in theory, and easily applied when damages are sought at the end of the lease term, *a concrete estimation of damage is not always easily made when the action seeks to collect immediate lump sum damages in the form of accelerated rent on a lease breached with a substantial amount of time remaining in the term.* ... [D]etermining the fair market value of the balance of the lease term may require a difficult assessment of future market conditions to calculate the future rental value of the premises, and the probability of reletting for the full remaining term.

*Peterson*, 206 Ga. App. at 593 (emphasis added) (quote and cite omitted). Thus, the logic behind the first prong can be simplified as follows: the more difficult it is to accurately estimate the injury caused by the breach, the greater the applicability of a damages clause. The *Peterson* court focused on the length of the remaining term as the major indicator that an injury will be difficult to accurately estimate. The longer the remaining term, the more difficult it will be to reach a "concrete estimate of damage" from the breach, and, therefore, the greater the need for a provision to help calculate the damages. In *Peterson*, the court found that this prong was satisfied, since it would be "sufficient[ly] difficult[]" to estimate damages on the lease there, where over a year and a half period remained. *Id.* In the case at hand, just over ten years out of the twenty-year term of the lease remains. It is reasonable to assume that a concrete estimate of damage would be difficult to reach without the application of the accelerated rent provision. As a result, the first *Nobles* factor appears to be satisfied.[2]

The second *Nobles* requirement – that the parties intended the provision to provide for damages rather than a penalty – was not given much attention by either party, save for Saulat's statement that "nowhere in the accelerated rent provision do the parties expressly state their intention that the provision provide for damages rather than a penalty." Doc. # 8 at 3. *Nobles*, however,

---

[2] Saulat apparently concedes that this factor has been met, though perhaps it does so inadvertently. In its motion to dismiss, Saulat cites *Patterson*, and declares that "[i]f a remaining term of a year and [a] half [in *Patterson*] causes difficulty in estimating the landlord's probable loss, then it follows that a remaining term of almost ten and a half years [in the present case] creates significant difficulty in estimating a landlord's probable loss." Doc. # 8 at 5. Saulat, however, then cites *Jones v. Clark*, wherein the Georgia Court of Appeals refused to apply a provision where four and a half years remained on the lease. 147 Ga. App. 657, 659 (1978). As Saulat itself notes, however, the court refused to uphold that provision not because it deemed the remaining lease period "too long," but because the provision allowed the landlord to collect the "rental payments at their full future value while also allowing him to retake the premises with no obligation to relet them for the benefit of the tenant," a shortcoming that would be exacerbated by the large number of remaining payments. *Id.* By contrast, the provision here accounts for future rental value and the probability of reletting the premises, and thus does not suffer from the same shortcomings as the provision in *Jones*.

3

does not require that the parties' intent be expressly stated, and, in fact, in *Jones*, the Georgia Court of Appeals also took into consideration whether the parties there "otherwise manifest[ed] an intent to treat [the provision] as a provision for liquidated damages." 147 Ga. App. at 659. The provision here is couched in terms of indemnification. *See* doc. # 1, exh. A (lease agreement) at § 17.2(b) ("Landlord may elect by written notice to Tenant within 60 days following such termination to be *indemnified for loss of rent* by a lump sum...."). Indemnification is, at its core, compensation for damages, and therefore is clearly not a penalizing measure. *See* Black's Law Dictionary 837 (9th ed. 2009) (defining "indemnification" as "the action of compensating for loss or damage sustained"). Thus, the provision appears to meet the second requirement.

Finally, under the third *Nobles* requirement, "the stipulated sum must be a reasonable pre-estimate of the landlord's probable loss." 260 Ga. App. 18 at 20. This factor has been the crux of the dispute between Saulat and Cherry Farms. The *Peterson* court emphasized that where a provision gives a landlord the authority to both retake possession of the premises and to collect a present lump sum award of future rent, in order to prevent the landlord from receiving a windfall, the provision's damages calculation must consider both "the future rental value of the premises and the likelihood of reletting." 206 Ga. App. at 592. That court additionally noted that "[r]eduction of the accelerated rent to present value is a factor tending to establish that the accelerated rent sum is a reasonable estimate of probable loss." *Id.* Significantly, the court explicitly stated that, "Actual damages at the time of the breach may be stated as the difference between the rent which would have been payable by the tenant under the lease, and the market value of the premises for the remainder of the original lease term." *Id.* (citing *Szabo Assoc. v. Peachtree-Piedmont Assoc.*, 141 Ga. App. 654, 654-55 (1977)).

Although the provision here does allow Cherry Farms to retake possession of the premises, the provision is still valid since the damages calculation gives Saulat credit for "the future value of the premises and the likelihood of reletting," as required under Georgia law. In fact, the provision comports with *Peterson*'s specific description of a valid provision, since it calculates damages as "the difference between the rent which would have been payable by the tenant under the lease, and the market value of the premises for the remainder of the original lease term." This eliminates the need for any predictions on reletting (which would likely lead to more dispute) by simply assuming that the premises will be rented out at fair market value for the entire remainder of the lease term. The provision thus only seeks from Saulat the benefit of Cherry Farms' bargain with Saulat; that is, Saulat is only responsible for the "extra" rent (the amount in excess of the fair market value) that it committed itself to under the terms of the lease agreement, and it does not have to bear any of the risk that Cherry Farms will be unable to re-lease the property since the rent acceleration clause gives credit for the value of the fair market rent of the property whether Cherry Farms relets the premises or not. Moreover, the provision calls for the reduction of the future rent to present value, further comporting with the *Peterson* court's third requirement. Thus, Saulat has not clearly shown, as a matter of law, that the provision's resulting accelerated rent calculation will not constitute a "reasonable pre-estimate" of Cherry Farms' damages.

Having determined that all three of the *Nobles* requirements for a valid accelerated damages provision appear to be satisfied, the

Court concludes that it is far from a "legal certainty" that the accelerated rent provision will be unenforceable.[3] The precise total damages remain to be seen, following careful – and likely expert-assisted – calculations by both parties regarding the fair market value of the outstanding rent (discounted to present value). Nonetheless, based on the undisputed figures presently before the Court, *see supra* note 1, it is far from a "legal certainty" that Cherry Farms will not be entitled to more than $75,000, and Cherry Farms has thus satisfied 28 U.S.C. § 1332's amount in controversy requirement.[4]

IV. Conclusion

For the foregoing reasons, defendant Saulat Enterprises, Inc.'s Motion to Dismiss is *DENIED*. Doc. # 8. As a result, the stay on discovery pending the Court's ruling, doc. # 22, is hereby *LIFTED*. The parties should proceed with litigating this case.

This day of 2 September 2009.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[3] In its Supplemental Brief in Support of Motion to Dismiss, Saulat additionally takes issue with the portion of the Complaint (and the relevant portion of the lease's accelerated rent provision) whereby Saulat is allegedly responsible for "taxes, insurance, maintenance and other expenses" for the remainder of the lease period. Doc. # 15 at 3-4 (citing doc. # 1 at 5-6). Saulat argues that requiring it to pay for these expenses will put Cherry Farms in "a superior position after default to what it was before such default occurred," since Cherry Farms will be able to relet the premises and potentially hold a new tenant responsible for these expenses as well. *Id.* The Court declines to examine this issue, as it does not affect the general validity of the accelerated rent provision, which is the Court's only concern during this limited jurisdiction-focused inquiry.

[4] This is especially true when one additionally considers the almost $20,000 Cherry Farms has claimed on Count I, and also the fact that Cherry Farms has made a claim for attorney's fees and costs for this litigation. *See* doc. # 1 at 4, 6-7; *id.*, exh. B.

5